IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MICHAEL C. HENDERSON,

                Plaintiff,

  v.                                                                                               OPINION and ORDER

JUSTIN S. RIBAULT, KAITLIN KINYON, and ANNA                       23-cv-127-jdp
R. FERNBERG,

                Defendants.

---

Plaintiff Michael C. Henderson alleges that defendants, medical personnel at Wisconsin Secure Program Facility (WSPF), denied him medical care for his chronic lower back and shoulder pain. Henderson proceeds on an Eighth Amendment medical care claim against defendant Dr. Justin S. Ribault and nurse-defendants Kaitlin Kinyon and Anna R. Fernberg. Henderson brought this action without counsel, but he is now represented.

Defendants move for summary judgment. Dkt. 62. The undisputed facts show that Ribault had a legitimate reason to cancel Henderson's referral to a neurosurgeon, and that Kinyon and Fernberg promptly responded to Henderson's medical requests and made reasonable efforts to address his concerns. I will grant summary judgment to defendants and close the case.

## UNDISPUTED FACTS

I begin with a word about Henderson's summary judgment opposition. On summary judgment, this court requires the moving party, here defendants, to set out a statement of proposed facts with citations to admissible supporting evidence. *See* the attachment to Dkt. 29. The party opposing the motion, here Henderson, must answer each proposed fact in separate

paragraphs and support each factual dispute with a clear citation to admissible evidence. *See id.* at 3–4. The court will not search the record for evidence, and responses to fairly proposed facts are not to be argumentative. *Id.* at 2, 5. If a party's response to a proposed fact does not comply with the court's procedures, the court will take the opposing party's factual statement as true and undisputed. *Id.* at 8.

Henderson's response to defendants' proposed facts doesn't comply with the court's procedures. Henderson grouped several proposed facts together and provided broad, argumentative responses to each group of proposed facts. *See* Dkt. 83. Henderson supported most of these responses with general citations to exhibits that consist of hundreds of medical records. *See id.*

Henderson's own proposed facts are also deficient. Henderson supports his proposed facts with specific citations to evidence, but the evidence mostly fails to support the broad propositions for which cites it. *See* Dkt. 84; *see also* Dkt. 87 (defendants explaining how Henderson's proposed facts are deficient). Consequently, I will accept defendants' proposed facts as true and undisputed, and I will disregard Henderson's proposed facts except where defendants do not dispute them.

With that background, the following facts are undisputed.

Henderson was diagnosed with degenerative disc disease and disc protrusions at L3-L4 and L4-L5, with evidence of narrowing of the openings where nerves exit and nerve root impingement. Henderson suffered from documented chronic lower back pain starting no later than 2020 and persisting through 2023. Henderson also suffered from degenerative joint disease and inflammation of the subacromial bursae in his right shoulder.

Henderson is incarcerated at WSPF and the events at issue occurred there. Defendant Ribault is employed as a physician for the Department of Corrections and provides limited coverage at WSPF, where he was Henderson's primary care provider. Defendants Kinyon and Fernberg were registered nurses at WSPF.

### A. Ribault's care

In late June 2022, Dr. Shirley Godiwalla referred Henderson to an offsite neurosurgeon for his complaints of chronic lower back pain. *See* Dkt. 65-1 at 14. On September 1, 2022, Sarah Martin, who handled scheduling matters, notified Ribault that neurosurgery needed an updated MRI of Henderson's lumbar spine before neurosurgery could schedule Henderson for an appointment. Dkt. 65-2 at 23. Henderson's most recent MRI, performed in August 2022, was of his right shoulder; the most recent MRI of his back dated to November 2020. *See id.* at 40, 105. In response, Ribault discontinued the neurosurgery referral and ordered a new MRI of Henderson's lumbar spine. Dkt. 65 ¶ 66. Martin scheduled the appointment, and Gunderson Radiology performed the new MRI in November 2022. Dkt. 65-1 at 23; Dkt. 65-2 at 103–04. Ribault reviewed the MRI later that month. Dkt. 65-2 at 93. Ribault noted that there were changes at Henderson's L3-L4 level, and he referred Henderson to a pain management specialist. Dkt. 65 ¶ 83; Dkt. 65-2 at 93.

### B. Kinyon's care

Kinyon received two health service requests (HSRs) from Henderson in mid-November 2022 in which he complained of chronic lower back and shoulder pain. Dkt. 65-3 at 81–82. Kinyon scheduled Henderson to see a nurse promptly in response to the first HSR, but Henderson refused a visit. Dkt. 65-1 at 130. In response to the second HSR, Nurse Courtney Keith saw Henderson the same day. *Id.* at 59–62. Keith noted that Henderson was under a

3

provider's care, and she informed Henderson that she would tell the provider that he wanted the results of his recent MRI. *Id.* at 62.

Kinyon received two HSRs in mid-December 2022 in which Henderson complained of the same problems. Dkt. 65-3 at 75–76. Kinyon scheduled Henderson to see a nurse promptly, but Henderson refused a visit. *Id.* at 12. Kinyon saw Henderson in about a week, and she entered a new referral for him to see his provider. Dkt. 65-1 at 58.

Kinyon received similar HSRs from Henderson in late December 2022. Dkt. 65-3 at 72–74. Kinyon scheduled him to see a nurse promptly, and Fernberg saw him that day.

In about three weeks, Kinyon received four similar HSRs. *Id.* at 68–71. Kinyon scheduled Henderson to see a nurse promptly, but he refused a visit. *Id.* at 10.

Kinyon received similar HSRs in early February 2023. *Id.* at 63–64. Fernberg saw Henderson that day and contacted Ribault, who prescribed carbamazepine for pain, which Henderson had previously refused to use. Dkt. 65-1 at 125; Dkt. 66 ¶ 85. Kinyon received an HSR in late February complaining about that medication, and Kinyon noted that he was scheduled to be seen by a provider soon. *See* Dkt. 65-3 at 62.

## C. Fernberg's care

In late November 2022, Fernberg received two HSRs from Henderson in which he complained of chronic lower back and shoulder pain. Dkt. 65-3 at 79–80. In the second HSR, Henderson also asked for the results of his recent MRI. *Id.* at 80. Fernberg saw Henderson that day. Dkt. 65-1 at 129–30. She told him that WSPF had yet to receive the results of the MRI, and that his provider would review the results when they came in. *Id.* at 129. Henderson said that he understood and that he was doing well and didn't need anything else. *Id.* at 130.

Fernberg received a similar HSR from Henderson in late November 2022. Dkt. 65-3 at 78. She saw him that day and informed him that she would contact Ribault about reviewing his MRI results. Dkt. 65-1 at 129. Henderson reported that his pain wasn't new and that he didn't need an assessment that day, and he agreed to wait for Ribault to review his MRI results and determine a plan of care. *Id.* Fernberg contacted Ribault later that day. Dkt 65-2 at 20. She told Ribault that Henderson wanted his MRI results and had continuously filed medical requests about chronic pain. *Id.* Later that day, Ribault wrote Henderson to inform him that he had reviewed the MRI and made a referral to a pain management specialist. Dkt. 65-2 at 93.

In late December 2022, Fernberg received a similar HSR from Henderson. Dkt. 65-3 at 75. Fernberg saw Henderson that day and told him that he had a referral to see a pain management specialist, and Henderson said that he agreed with the plan of care. Dkt. 65-1 at 128. Fernberg did not enter a new referral to Henderson's provider because Kinyon had made a referral a week earlier. Dkt. 65-1 at 58; Dkt. 65-3 at 75.

Fernberg received two similar HSRs in late January 2023 and evaluated Henderson that day. Dkt. 65-3 at 65–66; Dkt. 65-1 at 47–50. Henderson said that his pain medications were ineffective for his chronic pain. Dkt. 65-1 at 50. Fernberg took Henderson's vital signs and noted that he walked to the visit without difficulty, had normal breathing, and was calm during the visit. *Id.* at 47–50. Fernberg reminded Henderson that he was under Ribault's care and had a referral to a pain management specialist. *Id.* at 50.

I will discuss additional facts as they become relevant to the analysis.

ANALYSIS

The Eighth Amendment prohibits prison officials from consciously disregarding the serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish a medical care claim, Henderson must show that he had an objectively serious medical condition that defendants consciously disregarded. *See Cesal v. Moats*, 851 F.3d 714, 721 (7th Cir. 2017). Defendants do not dispute for summary judgment purposes that Henderson's back and shoulder conditions and related pain are a serious medical need.

The issue is whether defendants disregarded that need. Conscious disregard requires that defendants are subjectively aware of that need. *See id.* at 721. That means that defendants knew of facts from which the inference could be drawn that a substantial risk of serious harm existed, and they actually drew that inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Conscious disregard involves intentional or reckless conduct, not mere negligence. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010).

The Eighth Amendment entitles prisoners to "adequate medical care," that is, "reasonable measures to meet a substantial risk of serious harm." *See Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006). The Eighth Amendment doesn't require "specific care" or "the best care possible." *Id.*; *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Disagreement between Henderson and defendants, or among medical professionals, about the proper course of treatment isn't enough to show conscious disregard. *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014); *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996).

Ignoring a prisoner's request for medical assistance outright can be enough to show conscious disregard of medical needs. *Petties v. Carter*, 836 F.3d 722, 729 (7th Cir. 2016) (en banc). If a medical professional has provided some care for a prisoner's condition, he

6

consciously disregards the serious medical need only if his care is so inadequate that it demonstrates an absence of professional judgment, that is, that no minimally competent professional would have responded in that way in the circumstances. *See Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 763 (7th Cir. 2021); *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 989 (7th Cir. 1998).

A. **Claim against Ribault**

Henderson proceeds against Ribault based on the allegation that Ribault canceled his referral to neurosurgery for no apparent reason on September 1, 2022. Dkt. 54 at 9. But the undisputed facts show that Ribault had a legitimate reason to cancel the referral. On that date, Martin notified Ribault that neurosurgery needed an updated MRI of Henderson's lumbar spine before it could schedule him for an appointment. So Ribault canceled the neurosurgery referral and ordered a new MRI of Henderson's lumbar spine, which was later performed. Ribault did not, as Henderson alleges, needlessly interfere with his neurosurgery referral.

If Henderson faults Ribault for not taking further steps to ensure that a neurosurgeon saw him once the new MRI was taken, this contention is outside the scope of the claim on which I allowed him to proceed. *See Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012) ("[A] plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment."). Besides, this new contention would not show conscious disregard. Ribault reviewed the new MRI, noted that there were changes at the L3-L4 level, and referred Henderson to a pain management specialist. Ribault says that he made this decision "because for neuropathic pain, a pain management provider may provide options, such as injections, which can be effective and are less risky than surgery." Dkt. 65 ¶ 83. Henderson's disagreement with Ribault's medical judgment does not show conscious disregard.

7

No reasonable juror could conclude that Ribault consciously disregarded Henderson's lower back pain by canceling his referral to neurosurgery. I will grant summary judgment to Ribault.

### B. Claim against Kinyon

Henderson proceeds against Kinyon based on events that occurred between November 2022 and February 2023. Dkt. 54 at 7. Henderson alleges that Kinyon repeatedly acknowledged but failed to respond to his requests for treatment for his chronic back and shoulder pain. *Id.*; Dkt. 23 at 5.

The undisputed facts show otherwise. Kinyon promptly scheduled Henderson to see a nurse in response to the HSRs that he submitted in that period. Kinyon, Courtney, and Fernberg saw Henderson except when he refused visits. When Kinyon first saw Henderson in December 2022, she entered a new referral to his provider. Kinyon did not schedule Henderson to see a nurse in response to his February 2023 HSR, but she noted that he was scheduled to be seen by a provider soon. Kinyon did not disregard Henderson's numerous medical requests.

Henderson faults Kinyon for not expediting an appointment with a provider given his continuous complaints of serious pain. But Kinyon entered a new referral to Henderson's provider when she first saw him in the period at issue. And it's undisputed that Kinyon did not control how quickly a provider could see a patient once she placed a referral. Dkt. 86 ¶ 200; *see also Miller v. Harbaugh*, 698 F.3d 956, 962 (7th Cir. 2012) (defendants cannot be liable under 42 U.S.C. § 1983 "if the remedial step was not within their power").

No reasonable juror could conclude that Kinyon consciously disregarded Henderson's serious medical need. I will grant summary judgment to Kinyon.

**C. Claim against Fernberg**

As with Kinyon, Henderson proceeds against Fernberg based on events that occurred between November 2022 and February 2023. Dkt. 54 at 7. Henderson alleges that Fernberg intentionally delayed in responding to some of his medical requests and at most checked his vitals when she would see him. *Id.* at 7–8; Dkt. 23 at 5–6.

Again the undisputed facts show otherwise. Fernberg responded to all the HSRs that Henderson submitted in that period and she saw him the same day that she received them. Fernberg also provided more care than checking Henderson's vitals. In November 2022, Fernberg discussed Henderson's request for his MRI results and told Ribault about that request and his continuing complaints of chronic pain. Fernberg did not enter a new referral to Ribault when she saw Henderson the next month, but that was because Kinyon had already made a referral. In any case, Henderson told Fernberg that he agreed with Ribault's plan to send him to pain management. In January 2023, Fernberg's evaluation went beyond taking Henderson's vital signs. She noted that he walked to the visit without difficulty, had normal breathing, and was calm during the visit, and she was aware that he was under Ribault's care and had a referral to a pain management specialist for his chronic pain. Henderson's condition was not emergent and he was under a provider's care. The evidence does not support a reasonable inference that Fernberg thought that he required greater care at that time. When Fernberg saw Henderson in February 2023 she contacted Ribault, who prescribed a new pain medication. Fernberg took prompt action to address Henderson's medical concerns.

Henderson faults Fernberg for not expediting an appointment with his provider or providing further treatment. But even though Henderson's condition was not emergent and he was under Ribault's care, Fernberg contacted Ribault twice in period at issue. Fernberg made

9

reasonable efforts to ensure that Henderson received care from Ribault. Also, it's undisputed that, as a registered nurse, Fernberg could not prescribe additional medication. Dkt. 86 ¶ 242; see also *Miller*, 698 F.3d at 962. By the same token, Fernberg was entitled to defer to Ribault's plan of care. *See Pulera v. Sarzant*, 966 F.3d 540, 553 (7th Cir. 2020) (nurses entitled to defer to doctor's medical judgment).

No reasonable juror could conclude that Fernberg consciously disregarded Henderson's serious medical need. I will grant summary judgment to Fernberg.

ORDER

IT IS ORDERED that:

1. Defendants' motion for summary judgment, Dkt. 62, is GRANTED.
2. The clerk of court is directed to enter judgment and close the case.

Entered July 7, 2025.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge